HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL ANTONIO JORDAN,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. C08-5462RBL
CR05-5823RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon Defendant's Motion pursuant to 28 U.S.C. §2255. Having considered the entirety of the records and file herein, the Court finds and rules as follows:

## I. BACKGROUND

On February 20, 2007 the defendant pleaded guilty pursuant to Fed. R. Crim. P. 11 (c)(1)(C) to kidnapping resulting in death (Count 3). He was sentenced to 228 months in custody on July 24, 2007. He timely filed a Notice of Appeal and on September 24, 2008 the Ninth Circuit affirmed the sentence of the Court.[1] Jordan raises six claims in his motion: (1) multiplicitous indictment; (2) coerced and unknowing guilty plea; (3) errors in the presentence report; (4) sentencing disparity with co-defendants; (5) various mental health issues justifying a downward departure; and (6) ineffective assistance of counsel.

---

[1] Even though Jordan filed his §2255 motion prior to the Ninth Circuit's disposition of his appeal, this Court now has jurisdiction over the motion due to the subsequent judgment affirming the sentence.

ORDER
Page - 1

Aside from his challenge to the indictment as multiplicitous alleged in Ground One and the sentencing disparity among co-defendants alleged in Ground Four, his claims are more properly considered as allegations of ineffective assistance of counsel and will be analyzed under the standards set forth in *Strickland v. Washington* and its progeny.

## II. **FACTS AND PROCEDURE**

On August 30, 2005 the defendant set in motion the events that would lead to the senseless death of Christopher Jerry. Jerry was killed because he owed Jordan $1,500 and because of Jerry's relationship with a fifteen-year-old female relative of Thomas Dunigan. The defendant's role in the murder of Christopher Jerry and subsequent attempts to cover it up are set out in great detail in his plea agreement. The Court will briefly summarize them here.

During the night of August 30-31, 2005, Michael Jordan, Jacob Gardner and a juvenile (Raymond Robinson) tricked Christopher Jerry into driving them in Jerry's Ford Explorer to Fox Island, Washington. Once there, Jerry was punched and kicked by the three men and tied up with green cord produced by Jordan. Jordan stole Jerry's ATM card, forced Jerry to give him the PIN, and later attempted twice to access the account. They placed the tied up Jerry in the back of the Explorer, covered him with bags of clothes, and drove back to Tacoma, Washington.

On the drive to Tacoma, the assailants decided they would take Jerry to Thomas Dunigan's residence in the Tillicum section of Lakewood. Upon their arrival, Dunigan entered the Explorer and punched Jerry several times. Dunigan also placed an assault rifle in the Explorer. Markus Moore arrived at Dunigan's residence in a separate vehicle. Dunigan got in Moore's car and directed Jordan and the others to follow in the Explorer with Jerry still tied up inside.

Dunigan led the others to the ASP crash gate at Fort Lewis. After they arrived, Dunigan retrieved the assault rifle from the Explorer and while attempting to chamber a round, jammed the weapon. When the rear of the Explorer was opened, Jerry, who had freed himself from his restraints, ran. Jordan chased him, caught him, and tackled him to the ground near a fence. With Jordan on top of Jerry, Markus Moore approached with a revolver in hand, and told Jordan to get out of the way. Jordan replied "I got this" or words to that effect while still holding Jerry. While Jerry was still on the ground, Moore fired about five shots at Jerry, killing him. Gardner pulled Jordan away as Moore was shooting Jerry. They left Jerry

where he lay and fled the scene.

After stealing several items from Jerry's Explorer (including the in-dash stereo), Gardner and Jordan abandoned it in North Tacoma. Gardner later burned a duffel bag taken from the Explorer together with Jordan's bloody clothes that had been hidden at the home of Apryl Beach (Jordan's girlfriend). The stolen car stereo was found in the trunk of Jordan's car during a search subsequent to Jordan's arrest, and his key ring with a lanyard made of green cord similar to that used to tie up Jerry was previously recovered from Jordan by Army CID.

After his arrest and immediately prior to his initial appearance on the Complaint filed in this matter, Jordan underwent a proffer session with the government in the presence of his attorney, Charles Johnston. At that session, Jordan admitted or confirmed most of the above facts. At a subsequent proffer about a year later, Jordan initially told a different story implicating an unknown shooter and exonerating Moore. However, later in that same session, Jordan admitted his "new" story was false and indicated that the "new" story was Dunigan's idea.

Jordan was ultimately charged in seven counts of an eight count Fourth Superseding Indictment with: Conspiracy to Kidnap (Count 1); Conspiracy to Murder (Count 2); Kidnapping Resulting in Death (Count 3); First Degree Murder (Count 4); First Degree Murder-Felony Murder (Count 5); and Possession of a Firearm During and in Relation to a Crime of Violence (Counts 6 and 7). Based upon his guilty plea to Count 3, the remaining counts were dismissed at sentencing.

### III. DISCUSSION

**A. By His Guilty Plea, Jordan Waived His Challenge That the Indictment Contained Multiplicitous Counts.**

A claim that the indictment is flawed, e.g., was multiplicitous, must be raised prior to trial, or in this case, prior to a guilty plea. Fed. R. Crim. P. 12(b)(3)(B). It must be so raised or it is waived. *United States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997). Furthermore, any claim that the indictment was multiplicitous is rendered moot by the simple fact that the defendant pleaded guilty and was sentenced on only one count. *See United States v. Lewis*, 716 F.2d 16, 23 (D.C. Cir. 1983). And, finally, Jordan explicitly waived "all objections to the form of the charging document[]" in paragraph one of his plea agreement.

B. **Ineffective Assistance of Counsel Claims.**

   1. **Standard.**

The defendant's claim that his conviction and sentence must be vacated because he received ineffective assistance of counsel is evaluated under the standard articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish constitutionally ineffective assistance of counsel under *Strickland*, the defendant must show that (1) "counsel's performance was deficient," and (2) counsel's "deficient performance prejudiced the defense." *Id*, at 687. To show that counsel's performance was deficient, defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.*, at 688. This Court's "scrutiny of counsel's performance must be highly deferential[]" and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*, at 689. In the context of a counseled plea of guilty, *Strickland's* second prong of "prejudice" is satisfied only if the defendant can show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

   2. **Jordan's Guilty Plea Was Not Unknowing or Coerced.**

Jordan claims that his guilty plea was unknowing and coerced because the Indictment was multiplicitous and because he was "threatened" by both his own attorney and the government with life imprisonment.

The indictment was not multiplicitous. "An indictment is multiplicitous if it charges a single offense in several counts." *United States v. Rude*, 88 F.3d 1538, 1546 (9th Cir. 1996), *cert denied*, 519 U.S. 1058 (1997). "The test for multiplicity . . . is whether each separately violated statutory provision 'requires proof of an additional fact which the other does not.'" *United States v. McKittrich*, 142 F.3d 1170, 1176 (9th Cir. 1998) (*quoting Blockburger v. United States*, 284 U.S. 299, 304 (1932)), *cert denied*, 525 U.S. 1072 (1999). Here all charges in the indictment required proof of at least one additional fact which the others did not.

This Court is entitled to give substantial weight to the defendant's answers in open court, under oath, to the questions asked of him during the plea colloquy. *United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991). The transcript of the defendant's plea demonstrates that his plea was knowingly and

intelligently entered and was not the result of threats or coercion. When asked if he was satisfied with his attorney's services, he answered "Yes, sir." When asked if anybody had threatened he or his family in order to coerce him to enter this plea, he answered "I've agreed on my own free will." And, after the facts section of the plea agreement was read to him verbatim, he was asked if it was an accurate statement, and if he participated in the crime of his own free will. He answered affirmatively to both questions.

The fact that the government and defense counsel stated the reality of the potential mandatory life sentence if convicted on the murder, felony murder or kidnapping resulting in death charges does not equate to threats or coercion. If his counsel had not so advised him, counsel's performance would have been deficient.

Jordan entered his plea knowingly and intelligently. He was not threatened or coerced, and he received the effective assistance of counsel. This claim fails.

### 3. **Jordan's Objections to the Presentence Report Are Waived.**

Jordan argues that there were inaccuracies in the facts as set forth in the presentence report. Courts "have consistently held that a §2255 petitioner cannot challenge non-constitutional sentencing errors if such errors were not challenged in an earlier proceeding." *United States v. McMullen*, 98 F.3d 1115, 1117 (9th Cir. 1996). The defendant thus waived his right to attack the presentence report in a §2255 motion because he did not attack the presentence report at sentencing or on direct appeal.[2] *United States v. Donn*, 661 F.2d 820, 824 (9th Cir. 1982); *United States v. Schlessinger*, 49 F.3d 683, 685 (9th Cir. 1994).

He may only raise this issue for the first time by way of a §2255 motion if he can show both cause for the failure to make the objection earlier and prejudice therefrom. *Evenstad v. United States*, 978 F.2d 1154, 1158 (9th Cir. 1992). If defendant can establish that he received the ineffective assistance of counsel, he will ordinarily have shown cause and prejudice. *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993).

---

[2] A review of the record indicates that Jordan was asked at sentencing if he understood what was in the presentence report and he answered affirmatively. He raised no objections to the facts contained in the presentence report. Counsel filed an *Anders* brief on appeal and did not raise the alleged inaccuracies in the presentence report as a possible issue. Jordan was given the opportunity to file a supplemental pro se brief on appeal and chose not to file his own brief raising the issue.

Notwithstanding that most of the facts in the presentence report came directly from the Statement of Facts contained in the Plea Agreement and specifically adopted by the defendant, the variances could not have affected this Court's sentencing decision. Counsel's failure to object to some discrepancies in the facts was not deficient and did not prejudice the defendant. *See also* §5.B. This claim fails.

**4.     Defendant's Mental Health Was Before the Court.**

Jordan claims that his counsel should have argued that Jordan deserved a lesser sentence due to extreme childhood abuse, PTSD, and the loss of his wife after returning from Iraq. The Court had before it the psychological evaluation of Allen Traywick, Ph.D. which outlined Jordan's mental health issues. The report was discussed at Jordan's sentencing hearing. The fact that the defendant is depressed about his situation and the sentence he received does not warrant relief. Counsel presented Jordan's mental health to the Court. His performance was not deficient. This claim fails.

**5.     Jordan Received the Effective Assistance of Counsel.**

The defendant alleges that his counsel was not prepared to go to trial thus leaving him no choice but to plead guilty. He also alleges that counsel was unprepared and ineffective at sentencing. Jordan is wrong on both counts.

In the face of overwhelming evidence of guilt including physical evidence, the defendant's own statements to the government implicating himself in the murder of Christopher Jerry, and the testimony of co-defendants Jacob Gardner and Apryl Beach, Jordan's counsel successfully negotiated a plea to a binding Fed. R. Crim. P. 11 (c)(1)(C) range of sixteen to twenty-two years. By this binding plea agreement, counsel was able to convince the government that the defendant should not be sentenced to mandatory life imprisonment. At sentencing counsel successfully argued for a sentence of nineteen years (228 months) when the Probation Department recommended twenty-two years and the government advocated for twenty-one years. Despite the fact that co-defendant Thomas Dunigan received a twenty year sentence and the Court, on the record, stated that Jordan and Dunigan were equally culpable, counsel's eloquent and impassioned argument resulted in Jordan's lower sentence. The defendant received only nineteen years because counsel outlined the defendant's less than ideal upbringing, mental health issues, and military service to the country in Iraq. He then used those facts to demonstrate that the defendant was deserving of

a lesser sentence than his equally culpable co-defendant, Thomas Dunigan.[3]

Defense counsel, Charles Johnston's representation of Jordan was exemplary. The defendant did not receive the ineffective assistance of counsel, he received extraordinarily effective assistance. This claim fails.

## C. The Sentences of Jordan, Gardner, and Robinson Were Not Unfairly Disparate.

Jordan claims that the sentence he received as opposed to the sentences of Jacob Gardner and Raymond Robinson were disparate and based on age and race discrimination. Jacob Gardner, a white male approximately the same age as Jordan received a ten-year sentence based on his early and very substantial cooperation. Raymond Robinson, an African-American juvenile was sentenced to five years. He cooperated by twice wearing a body wire inside the Pierce County Jail. His cooperation was crucial to the conviction of the shooter, Markus Moore. Robinson, who was a juvenile at the time of the crime, was convicted and sentenced in state court. The sentences were not disparate nor were they based on discrimination.

## IV. CONCLUSION

Jordan's indictment was not multiplicitous nor was his sentence disparate. He was not subjected to the ineffective assistance of counsel, rather he was the beneficiary of exemplary representation.

---

[3]At sentencing the Court stated:

> It is possible from the circumstances of this case to say that everybody and everything that was done that night was a tool in your hands. I came out here thinking that, looking at this offense in particular, which I think is by far the overriding factor in what dictates a reasonable sentence, that your participation was not one iota less culpable than Mr. Dunigan's, who I think was the leader and mastermind of the last few moments of Mr. Jerry's life. You turned that over to him, but you continued to participate.
>                             * * *
> So I came out here having concluded in my own mind that the same sentence that Mr. Dunigan got was what you should get.
> Mr. Johnston has argued passionately that there are critical difference between you and Mr. Dunigan, not with regard to this offense, in my judgment, but with regard to your former life. That you have served in the military; that you have been relatively law abiding; that you have suffered from mental disabilities that have or may have contributed to decisions that you have made, including on this evening. I'm not wholly convinced by the government's argument that when it comes to criminal history and former life that it's not worth something.
> It is for that reason that I am going to impose a sentence of 228 months and not the 240 months that I imposed upon Mr. Dunigan. But I want to make it clear that as far as I'm concerned that you are as culpable as Mr. Dunigan.

Sentencing transcript, pp. 39-40 [Dkt. #307].

ORDER
Page - 7

Defendant's Motion pursuant to 28 U.S.C. §2255 is therefore **DENIED.**

The Court declines to issue a certificate of appealability because the defendant has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).

**IT IS SO ORDERED.**

Dated this 31st day of December, 2008.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE